1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BEUS GILBERT MCGRODER PLLC**
ATTORNEYS AT LAW
701 North 44th Street
Phoenix, Arizona 85008
Telephone: (480) 429-3000

Thomas A. Gilson (AZ Bar No. 022460)
tgilson@beusgilbert.com

Counsel for Petitioners

**PALLAS PARTNERS (US) LLP**
75 Rockefeller Plaza
New York, NY 10001
Telephone: (212) 970-2300

Duane L. Loft*
Duane.Loft@pallasllp.com
Brianna Hills Simopoulos*
Brianna.Simopoulos@pallasllp.com

*_Pro hac vice_ application forthcoming

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re Application of<br><br>FOURWORLD EVENT OPPORTUNITIES, LP and GENESIS EMERGING MARKETS INVESTMENT COMPANY<br><br>Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 22-<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** |

1

2

3

**TABLE OF CONTENTS**

APPLICATION ........................................................................................................ 1

FACTUAL BACKGROUND ................................................................................... 3

      A.      Parties to the Foreign Proceeding ..................................................... 3

      B.      The Merger.......................................................................................... 4

      C.      Petitioners' Cayman Islands Appraisal Proceeding ............................ 7

      D.      Discovery in the Cayman Islands Appraisal Proceeding................... 7

      E.      Respondent and the Discovery Sought ............................................. 8

ARGUMENT ............................................................................................................ 9

I.      The Application Satisfies the Three Statutory Requirements of 28 U.S.C. 1782.......... 10

      A.      Respondent "Resides" or Is "Found in" this District........................ 10

      B.      The Discovery Sought Is "For Use" In a Foreign Proceeding............ 11

      C.      Petitioners Are "Interested Persons."................................................ 11

II.      The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery. ..................... 12

      A.      Respondent Is a Non-Participant in the Appraisal Proceeding.......... 12

      B.      The Cayman Islands Court Is Receptive to the Requested Discovery............... 13

      C.      Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions........ 14

      D.      The Subpoena Is Not Unduly Burdensome. ..................................... 15

CONCLUSION ...................................................................................................... 17

i

1

## TABLE OF AUTHORITIES

2

## Cases

3

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA)*
*Ltd.*,
4
    785 F. Supp. 2d 434 (S.D.N.Y. 2011) .................................................... 13
5

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
6
    673 F.3d 76 (2d Cir. 2012) ..................................................................... 13
7
*Euromepa, S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) ............................................................. 12, 15
8

*Facebook, Inc. v. Banana ADS LLC*,
9
    No. CV 11–03619–YGR (KAW), 2013 WL 1873289 (N.D. Cal. Apr.
    30, 2013) .............................................................................................. 10
10

*Gushlak v. Gushlak*,
11
    486 F. App'x 215 (2d Cir. 2012) ............................................................ 13
12
*HRCHainan Holding Co., LLC v. Yihan Hu*,
    No. 19-mc-80277-TSH, 2020 WL 906719 (N.D. Cal. Feb. 25, 2020) . 14
13

*In re Accent Delight Int'l Ltd.*,
14
    869 F.3d 121 (2d Cir. 2017) .................................................................... 10
15
*In re Application of Athos Asia Event Driven Master Fund*,
    No. 1:21-MC-00208-GBF, ECF 8 (S.D.N.Y. Mar. 3, 2021) ............... 13
16

*In re Application of Athos Asia Event Driver Master Fund*,
17
    No. 4:21-MC-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26,
    2021) .................................................................................................... 13
18

*In re Bayerische Motoren Werke AG*,
19
    No. MC-22-00016-PHX-SPL, 2022 WL 1092804 (D. Ariz. Apr. 12,
    2022) .................................................................................................... 14
20

*In re Credit Suisse Virtuoso SICAV-SIF in Respect of Sub-Fund Credit*
21
    *Suisse (Lux) Supply Chain Fin. Fund*,
    No. MC-21-00051-PHX-DWL, 2022 WL 1265919 (D. Ariz. Apr. 28,
22
    2022) ...................................................................................................... 9
23
*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019) ................................................................. 10
24

*In re Ex Parte Appl. Varian Med. Sys. Int'l AG*,
25
    No. 16-mc-80048-MEJ, 2016 WL 1161568 (N.D. Cal. March 24, 2016)
    ........................................................................................................... 12
26

*In re Ex Parte Application of Ambercroft Trading Ltd.*,
27
    No. 18-MC-80074-KAW, 2018 WL 2867744 (N.D. Cal. June 11, 2018)
    ........................................................................................................... 13
28

*In Re Ex Parte Application of Nouvel, LLC*,
   No. 22-MC-0004-MCS(EX), 2022 WL 3012521 (C.D. Cal. June 8,
   2022), *report and recommendation adopted*, 2022 WL 2901715 (C.D.
   Cal. July 22, 2022)...................................................................................... 14

*In Re FourWorld Event Opportunities, LP*,
    No. 21-mc-00283-RGA, ECF No. 5 (D. Del. July 23, 2021) ............... 2

*In re Koninklijke Philips N.V.*,
   No.: 17-MC-1681-WVG, 2018 WL 620414 (S.D. Cal. Jan. 30, 2018) 13

*In re Nouvel, LLC*,
   No. 2:22-MC-00004-MCS-E, 2022 WL 2901715 (C.D. Cal. July 22,
   2022)........................................................................................................... 12

*In re Penner*,
   2017 WL 5632658 (D. Mass. Nov. 22, 2017)...................................... 13

*In re Pioneer Corp. v. Technicolor, Inc.*,
   No. LA CV18-04524 JAK (SSx), 2018 WL 4961911 (C.D. Cal. Sept.
   12, 2018)..................................................................................................... 11

*In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*,
   No. C18-1673JLR, 2019 WL 291673 (W.D. Wash. Jan. 23, 2019) ....... 9

*In re Platinum Partners Value Arbitrage Fund L.P.*,
   583 B.R. 803 (Bankr. S.D.N.Y. 2018) .................................................. 13

*In re Republic of Ecuador*,
   No. C-10-80225, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) ......... 12

*In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*,
   555 F.2d 720 (9th Cir. 1977) ................................................................ 10

*In re Wireless Facilities, Inc. Derivatives Litig.*,
   562 F. Supp. 2d 1098 (S.D. Cal. 2008). ............................................... 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ......................................................................passim

*Siemens AG v. W. Digital Corp.*,
   No. 8:13–cv–01407–CAS–(AJWx), 2013 WL 5947973 (C.D. Cal. Nov.
   4, 2013)................................................................................................ 12, 13

*Stockinger v. Toyota Motor Sales, U.S.A., Inc.*,
   No. 18MC00084VAPKSX, 2018 WL 6517106 (C.D. Cal. Aug. 15,
   2018)........................................................................................................... 14

*TS Prod., Inc v. Champion Fiberglass, Inc.*,
   309 F.R.D. 527 (N.D. Cal. 2015) .......................................................... 15

*Universal Church, Inc. v. Standard Constr. Co. of San Francisco, Inc*,
   No. 14-CV-04568-RS (KAW), 2015 WL 6167968 (N.D. Cal. Oct. 21,
   2015)........................................................................................................... 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Statutes</u>**

28 U.S.C. § 1782 ................................................................passim

## I.      APPLICATION

Petitioners respectfully submit this Application pursuant to 28 U.S.C. § 1782 to take limited discovery from entities found in this District for use in connection with an appraisal proceeding filed in the Grand Court of the Cayman Islands (the "**Cayman Court**") on November 10, 2020 (the "**Appraisal Proceeding**").   In the Appraisal Proceeding, Petitioners (along with other dissenting shareholders) seek a determination of the fair value of their former shareholdings in 58.com ("**58.com**" or the "**Company**"), a Cayman Islands company that was delisted from the New York Stock Exchange, and taken private on September 17, 2020.  Petitioners' shares were forcibly canceled through a $8.7 billion merger orchestrated by the Company's CEO and several private-equity funds (the "**Merger**").

In the Appraisal Proceeding, Petitioners and other dissenting shareholders will assert that the Merger was coercive and fundamentally unfair to minority shareholders, with respect to both the Merger price, which significantly undervalued 58.com's shares, and the process to approve the Merger.  Through this Application, Petitioners seek to take the deposition of Alex Nanyan Zheng ("**Respondent**"), a director of Ocean Link GP, one of the members of the Buyer Group in the Merger.  Mr. Zheng has knowledge that is relevant to the Appraisal Proceeding, in which the Cayman Court will examine both the fairness of the Merger consideration and also the process undertaken by the Company to approve the Merger.

Section 1782 authorizes this Court to order discovery from any person that resides or is found in this district to assist with proceedings before foreign tribunals.  Petitioners' Application meets all of the statutory requirements of Section 1782 (i) Respondent "resides or is found" in this District; (ii) the Requested Discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioners, each of which is a

1

party to the Appraisal Proceeding, easily meet the standard for an "interested person" under the statute. In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weighs decisively in favor of granting Petitioners' Application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("*Intel*").

*First*, Petitioners seek discovery from a "nonparticipant" in the foreign action. *Id.* Respondent is not a party in the Appraisal Proceeding or otherwise subject to the jurisdiction of the Cayman Court. This is a sufficient basis for the Court to hold that the first factor is satisfied.

*Second*, there is no indication, let alone the required "authoritative proof," suggesting that the Cayman Court might be unreceptive to Section 1782 assistance. *Id.* To the contrary, as established in the expert declaration of Justice Ingrid Mangatal (Ret'd) submitted in related Section 1782 proceedings, (1) Petitioners *prima facie* have the right to gather evidence pursuant to Section 1782 to the Cayman Court in support of their claims, and (2) admissibility of such evidence will be judged by the same know threshold of relevance and narrow exclusionary rules applicable to all other evidence presented to the Court. No court in the Cayman Islands considering an appraisal application has ever excluded evidence because it obtained using Section 1782.[1]

Indeed, the Directions Order from the Grand Court in the Appraisal Proceeding specifically contemplates that the parties will use Section 1782 to obtain evidence for use

---

[1] Justice Mangatal's declaration was submitted as part of applications in related Section 1782 proceedings for discovery in connection with the Appraisal Proceeding at issue here, including in *In Re FourWorld Event Opportunities, LP*, No. 21-mc-00283-RGA, ECF No. 5 (D. Del. July 23, 2021) ("**Mangatal Decl.**").

in that proceeding, the Petitioners have done so in related Section 1782 proceedings, and the Company has intervened in those actions, in each case, expressly taking no position as to the propriety of Section 1782 discovery. This is consistent with recent decisions from Cayman Islands appraisal cases, decisions of other U.S. courts finding that Cayman courts are receptive to Section 1782 evidence, and decisions of courts across the country in related Section 1782 proceedings, which have found that this Cayman court is receptive to Section 1782 discovery for this Appraisal Proceeding.

*Third*, the Application is not concealing any improper attempt to circumvent any foreign discovery restrictions on proof gathering. *Intel*, 542 U.S. at 264. The requested discovery does not implicate any privilege or special protection that would make it improper under Cayman Islands law.

*Fourth*, the proposed discovery is not unduly burdensome. *Id.* To the contrary, the subpoena is narrowly tailored to seek information directly relevant to the critical issues in the Appraisal Proceeding—namely testimony from Respondent about the Buyer Group's negotiation and consummation of the Merger. Depositions are frequently granted under Section 1782.

## II.    FACTUAL BACKGROUND

### i.    Parties to the Foreign Proceeding

Petitioners are funds that invested in 58.com and owned 58.com shares immediately before the effective date of the Merger that is the subject of Appraisal Proceeding. *See* Declaration of Marc Kish in Support of Petitioners' Application ("**Kish Decl.**") ¶ 13. Petitioners are respondents in the Appraisal Proceeding. *Id.* ¶ 13. Before the Merger, 58.com—China's largest online classifieds business—was a publicly traded

corporation incorporated in the Cayman Islands. *Id.* ¶ 14.  The Company's American Depository Shares ("**ADS**") were traded on the New York Stock Exchange. *Id.* ¶ 15. Jinbo Yao, the Company's CEO and founder, historically maintained significant control over the voting shares of 58.com.  *Id.* ¶ 16.

### ii.    The Merger

On June 15, 2020—three months after the world was plunged into the COVID-19 global pandemic, which had a temporary negative impact on the demand for the Company's online classifieds services and thus its share price—the Company announced that it had entered into a merger agreement through which 58.com would be acquired by Mr. Yao along with a consortium of private equity funds (the **"Buyer Group"**).  *Id.* ¶ 19. In addition to Mr. Yao, the Buyer Group also included funds wholly owned and controlled by Warburg Pincus and General Atlantic—two New York-based private equity firms— along with Ocean Link Partners, a China-based private equity firm for which Mr. Zheng is a director.  As noted, through Mr. Yao, the Buyer Group collectively controlled over 44% of the Company's voting shares as of August 7, 2020.  *Id.* ¶ 20.

The announcement stated that on the effective date of the Merger, 58.com's publicly traded ADS—equity shares of a foreign company held by a U.S. depositary bank available for purchase by U.S. investors—would be canceled in exchange for the right to receive $56 per ADS.  *Id.* ¶ 21. Under the terms of the Merger, 58.com was to become a wholly owned subsidiary of a company called Quantum Bloom Group Ltd, which would be beneficially owned by the Buyer Group, including Mr. Yao, Warburg Pincus, General Atlantic, Ocean Link, and others.

The lead-up to the Merger announcement was characterized by a flawed process designed to engineer the management buyout desired by Mr. Yao and his private equity partners.  On March 24, 2020, the Company engaged Kaihui Limited ("**Kaihui Limited**") as its consultant to explore strategic transactions.  On April 2, 2020, Kaihui Limited contacted Ocean Link; incredibly, that very evening, Ocean Link submitted a proposal to acquire all the outstanding shares of the Company at $55 per share, an offer clearly designed to opportunistically capitalize on a temporary depression on 58.com's trading prices associated with the coronavirus outbreak, which immediately before, on January 16, 2020, were in excess of $69 per share.  The Company then decided to create a Special Committee of independent board members, which would be tasked with considering the Merger.  However, there were <u>no</u> independent board members at the time.  The Company consequently appointed two new board members: Li (Lily) Dong and Robert Frank Dodds, Jr. who, together, comprised the entire Special Committee.

Other features of the Merger process give rise to significant concern.  The Special Committee treated Kaihui Limited as its advisor and agent throughout its negotiations with the Buyer Group, even though Kaihui Limited was hired by the same members of the Company's management that would later propose the transaction as part of the Buyer Group.  No effort was undertaken to shop the Company to competing bidders to ensure that 58.com shareholders received maximum value for their shares.  Ultimately, the Special Committee and the Buyer Group agreed to a purchase price of $56 per share, but only after removing a critical protection that would have required approval by a majority of the minority shareholders (the "**MoM Condition**") to protect minority shareholder rights, making the approval of the transaction almost certain regardless of support from

the minority shareholders. As previously noted, the Buyer Group that took 58.com private collectively held 44% of the Company's voting shares, and other principal shareholders (who collectively held 28% of the Company's voting power) were incentivized to vote for the Merger because they were not required to exchange their shares for the inadequate Merger consideration (i.e., their shares were rolled over into the merged company). Thus, the controlling shareholders were able to impose the Merger on minority shareholders without their consent. The negotiation process took only 74 days, and the price negotiation only lasted 10 days, a staggeringly rushed timeline designed to undervalue the Company and squeeze out minority shareholders.

Although minority shareholders expressed concern about the deal, on September 7, 2020, the Company held an extraordinary general meeting of shareholders (the "**EGM**"), at which time 58.com shareholders voted on whether to approve the Merger. Kish Decl. ¶ 28. Only 15% of all shareholders that were unaffiliated with either the Buyer Group or the Rollover Shareholders voted in favor of the transaction. Despite widespread opposition from the unaffiliated shareholders, the transaction was forced through. Accordingly, Petitioners' shares and the shares of all remaining stockholders—other than Members of the Buyer Group—were canceled in exchange for the Merger consideration effective September 17, 2020, at a price Petitioners allege is substantially below their fair value. *Id.* ¶ 29.

As alleged in the Appraisal Proceeding, the Merger price significantly undervalued 58.com shares, was the result of a significantly flawed process, and was coercive and unfair to 58.com's minority shareholders.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### iii.      Petitioners' Cayman Islands Appraisal Proceeding

Under Section 238 of the Companies Act, the Cayman Court in the Appraisal Proceeding has a statutory obligation to determine the fair value of the dissenting shareholders' shares.  As described in the declaration of Justice Mangatal, the parties to the Appraisal Proceeding—including the Petitioners and 58.com—will submit evidence, expert testimony, and legal briefs to the Cayman Court, which will weigh the evidence and determine the fair value of Petitioners' shares.  *See* Mangatal Decl. ¶ 18.  In assessing fair value in a Cayman Islands Appraisal Proceeding, the Cayman Court will examine the fairness (or lack thereof) of the process that led 58.com's board to approve the Merger.  In doing so, the Cayman Court will consider the fairness of the Merger to 58.com's minority stockholders and will likely focus on, among other things, the process by which the 58.com board and/or Special Committee negotiated and approved the Merger price, and the valuations relied upon by the 58.com Special Committee and the Buyer Group.

### iv.      Discovery in the Cayman Islands Appraisal Proceeding

There is no automatic right to discovery in Section 238 proceedings similar to pre-trial discovery in the United States.  Instead, only upon Court order is a party to the proceeding required to provide discovery of "documents which are in their possession, custody or power relating to any matter in question between them in the action."  Mangatal Decl. ¶ 32 (citing Grand Court Rules ("GCR") Order 24 rule 3).  Discovery of non-parties, particularly those like Respondent that are outside the Court's jurisdiction, is very limited, subject to cumbersome procedures, and rarely used.  *Id*. ¶ 43.  The discovery process in the Appraisal Proceeding is ongoing.  Kish Decl. ¶ 12.

Nevertheless, Cayman Courts remain receptive to evidence obtained through other judicial measures such as 28 U.S.C. § 1782. Indeed, as explained by Justice Mangatal, "Cayman courts have had the opportunity to consider specifically the use of 28 U.S.C. §1782 in connection with Cayman Islands proceedings and have held that it is permissible for a litigant in a Cayman Islands proceeding to exercise any rights it may have under 28 U.S.C. § 1782 to obtain relevant evidence for use in proceedings in the Cayman Islands." *Id.* ¶ 55. All relevant evidence obtained through this Application, other than that for which privilege can be asserted, will be admissible in the Cayman Court. *Id*. ¶ 53. Furthermore, Cayman Islands courts expect the parties to obtain the evidence they believe is necessary to prosecute their case. *Id*. ¶ 66. There is no requirement to obtain permission from a Cayman Islands court before seeking relevant evidence abroad in the U.S. under 28 U.S.C. § 1782. *Id*. And indeed, the court order that governs discovery in the Appraisal Proceeding (the "**Directions Order**") contains a provision that expressly contemplates the use of Section 1782. *See* Kish Decl., Ex. B ¶ 50.

### v.     Respondent and the Discovery Sought

Respondent was involved in the Merger in at least two capacities. First, Respondent himself was a member of the Buyer Group that brought the Company private through the Merger. As described in the Proxy Statement, Respondent was one of the "Ocean Link Filing Persons" and a member of the Buyer Group. Proxy at i. Second, the Proxy Statement also explains that Respondent "owns 50% equity interest in Ocean Link GP," which "is the general partner of Ocean Link Partners," one of three private equity funds that was a member of the Buyer Group. Proxy at 2. Respondent is also a director of Ocean Link GP. Proxy at E-8. The Ocean Link website describes Respondent as one

8

of only a few members of its "senior leadership."  Loft Decl. Ex. 5 (screen capture of Ocean Link website).

Ocean Link played a critical role in the Merger.  Ocean Link made the original proposal to take the Company private.  Proxy at 26.  Ocean Link also solicited other members of the Buyer Group, including private equity funds General Atlantic and Warburg Pincus.  Proxy at 27 ("representatives of each of Warburg Pincus and General Atlantic expressed to representatives of Ocean Link their interest in engaging in discussions to explore the possibility of participating in the transaction").  Throughout the negotiation process, representatives of Ocean Link, which may have included Respondent, engaged in frequent discussions with representatives of the Company, other members of the Buyer Group, potential lenders that indicated interest in participating in the Merger, among others.  Proxy at 27–29.  Ocean Link also engaged in extensive discussions with Kaihui Limited, the Company's advisor,[2] including even before Ocean Link submitted its proposal. *See, e.g.*, Proxy at 27 ("representatives of KL reviewed the Original Proposal with the Board and described discussions between representatives of KL and Ocean Link prior to the submission of the Original Proposal").

### III.    ARGUMENT

Section 1782 of Title 28 of the United States Code permits U.S. district courts to grant discovery for use in a pending foreign proceeding or a foreign proceeding.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 243 (2004).  A Section 1782 application must satisfy three "modest prima facie elements": (1) the discovery is sought from someone who resides or is found within the District; (2) the discovery is for use

---

[2] Another court in this Circuit recently granted discovery under Section 1782 in connection with the Appraisal Proceeding from Christopher Hsu, the principal of Kaihui.

before a foreign tribunal; and (3) the applicant is an "interested person." *In re Credit Suisse Virtuoso SICAV-SIF in Respect of Sub-Fund Credit Suisse (Lux) Supply Chain Fin. Fund*, No. MC-21-00051-PHX-DWL, 2022 WL 1265919, at *2 (D. Ariz. Apr. 28, 2022). If these statutory requirements are met, the court then considers four discretionary "*Intel*" factors. *Intel*, 542 U.S. at 264–65.

### a.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. 1782.

Petitioners satisfy the three threshold statutory requirements of Section 1782.

### A.    Respondent "Resides" or Is "Found in" this District.

The first statutory requirement is satisfied when the respondent "resides or is found" in the District. *See, e.g.*, *In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*, No. C18-1673JLR, 2019 WL 291673, at *3 (W.D. Wash. Jan. 23, 2019) (holding first statutory factor was satisfied because respondent "maintains a residence in this district"). According to a licensed private investigator's database search, Respondent is a "current resident" of a home in this District, which Respondent purchased in 2021. Burtis Decl. ¶ 3. Aside from being listed as a "current resident" of this District, Respondent is also the sole Member of Zheng Family LLC, an active Arizona-registered company. *Id.*

Respondent thus "resides or is found" in this District.[3]

---

[3] Alternatively, Respondent is "found in" this District. There does not appear to be binding precedent in this District on whether the "resides or is found" language in Section 1782 means the court must have personal jurisdiction over the party from whom Petitioners seek discovery. However, courts in other jurisdictions have found that Section 1782's statutory prerequisite is coextensive with personal jurisdiction. *See, e.g.*, *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) ("We hold, accordingly, that § 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process."). This Court has general personal jurisdiction over Respondent. General

10

1

2    **i.**    **The Discovery Sought Is "For Use" In a Foreign Proceeding.**

3        To establish that the information sought is "for use" in a foreign proceeding,

4    Petitioner must merely show that it has "the procedural right to submit the requested

5    documents to" the foreign tribunal.  *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d

6    Cir. 2017).  A Section 1782 petitioner is not required to demonstrate that the information

7    sought would be discoverable or admissible in the foreign proceedings.  *In re Request for*

8    *Judicial Assistance from the Seoul Dist. Criminal Court*, 555 F.2d 720, 723 (9th Cir.

9    1977) ("[F]ederal courts, in responding to [§ 1782] requests, should not feel obliged to

10   involve themselves in technical questions of foreign law relating to . . . the admissibility

11   before [foreign] tribunals of the testimony or material sought.").  Instead, the district court

12   considers "the *practical ability* of an applicant to place a beneficial document—or the

13   information it contains—before a foreign tribunal.").  Petitioners have already relied upon

14   evidence from related Section 1782 proceedings in the Appraisal Proceeding, and the

15   discovery process in the Appraisal Proceeding is ongoing.  Kish Decl. ¶¶ 39–40.  The

16   Requested Discovery is therefore plainly "for use" in the Appraisal Proceeding, and

17   Petitioners have thus satisfied the second statutory requirement.

18

19       **ii.**    **Petitioners Are "Interested Persons."**

20       "Litigants are included among, and may be the most common example of, the

21   'interested person[s]' who may invoke § 1782."  *Intel*, 542 U.S. at 256; *In re Pioneer*

22

23

24

25   _____

26   jurisdiction can be established by an individual's domicile, *Facebook, Inc. v. Banana ADS*
     *LLC*, No. CV 11–03619–YGR (KAW), 2013 WL 1873289, at *3 (N.D. Cal. Apr. 30,

27   2013) or, in the alternative, his or her "continuous and systematic" contacts with the
     forum. *In re Wireless Facilities, Inc. Derivatives Litig.*, 562 F. Supp. 2d 1098, 1102 (S.D.

28   Cal. 2008).

*Corp. v. Technicolor, Inc.*, No. LA CV18-04524 JAK (SSx), 2018 WL 4961911, at *5

(C.D. Cal. Sept. 12, 2018) ("An 'interested person' includes, but not limited to, parties in

a foreign proceeding.") (citing *Intel*, 542 U.S. at 256).  Because Petitioners are claimants

in the Appraisal Proceeding, Kish Decl. ¶ 34, they are "interested persons."  All of the

statutory elements are thus satisfied here.

        **b.**      **The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery.**

Once the statutory threshold requirements of Section 1782 are met, a district court

considers, in its discretion, whether to order the requested discovery.  To do this, the

district court looks to the four "*Intel* factors."  *See Intel*, 542 U.S. at 264.  Each of the

*Intel* factors is discussed below and weighs in favor of granting the Application.

        **A.**      **Respondent Is a Non-Participant in the Appraisal Proceeding.**

The first *Intel* factor asks whether the party from whom discovery is sought is a

party to the foreign proceeding.  The reason for this inquiry is because "when the person

from whom discovery is sought is a participant in the foreign proceeding . . . the need for

§ 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from

a nonparticipant in the matter arising abroad."  *Intel*, 542 U.S. at 264.  Respondent is not

a party in the Appraisal Proceeding, and therefore will not be subject to party discovery

in the Appraisal Proceeding.  Mangatal Decl. ¶ 42.  Further, because Respondent does not

reside in the Cayman Islands, the Cayman Court will not have jurisdiction to compel

discovery from him.  *Id*.  Petitioners, therefore, will not be able to take discovery of

Respondent through the Appraisal Proceeding, even though his testimony may be crucial

to the issues in that proceeding.  Accordingly, this first *Intel* factor weighs in favor of

granting the Application.  *In re Nouvel, LLC*, No. 2:22-MC-00004-MCS-E, 2022 WL

2901715, at *1 (C.D. Cal. July 22, 2022) ("some parties here are not party to the foreign litigation, and based on the parties' submissions of expert testimony, the Court has some doubt that the requested discovery is or will become available in the foreign courts"); *In re Republic of Ecuador*, No. C-10-80225, 2010 WL 3702427, at *3 (N.D. Cal. Sept. 15, 2010) ("[Discovery target] is not a party in the international arbitration, and therefore this factor weighs in the [petitioner's] favor.").

### i.   The Cayman Islands Court Is Receptive to the Requested Discovery.

The second *Intel* factor requires courts to consider whether the "nature, attitude, and procedures" of the foreign tribunal indicate that it is receptive to Section 1782 assistance.  This factor "focuses on whether the foreign tribunal is willing to consider the information sought."  *In re Ex Parte Appl. Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. March 24, 2016).   There is a strong presumption that foreign tribunals will be receptive to evidence obtained in the United States.   "[W]hen evaluating whether foreign tribunals would accept U.S. assistance," courts do not look for proof that the foreign tribunal will accept the evidence; to the contrary, they "'look for 'authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782.'"  *Siemens AG v. W. Digital Corp.*, No. 8:13–cv–01407–CAS–(AJWx), 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013) (quoting *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995)) (emphasis in original).  Absent "*authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of section 1782," courts are to "err on the side of permitting discovery."  *Varian Med. Sys.*, 2016 WL 1161568, at *4 (emphasis added).  As numerous courts across the country have held, Cayman Islands courts, and the Cayman court in the Appraisal

Proceeding in particular, are receptive to discovery under Section 1782.[4]  The receptivity of the Cayman Court to evidence obtained through this Application will be no different.

## ii.    Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  Importantly, the third *Intel* factor is satisfied unless the foreign court actively prohibits the petitioner from gathering the information sought.  *In re Koninklijke Philips N.V.*, No.: 17-MC-1681-WVG, 2018 WL 620414, at *2 (S.D. Cal. Jan. 30, 2018); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012); *Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons [that] do not necessarily signal objection to aid from United States federal courts."); *Siemens AG*, 2013 WL 5947973, at *3.  Moreover, "an applicant need not attempt to

---

[4] *See also In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("Liquidators present unrebutted evidence that, far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law."); *Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012) (affirming use of Section 1782 applications in connection with Cayman divorce proceedings); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (granting Section 1782 applications seeking documents for use in Cayman proceedings); *In re Penner*, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (finding that the Cayman Court "is open to receiving § 1782 discovery").  Indeed, two district courts recently granted 1782 petitioners' applications for both document discovery and a deposition for use in an appraisal proceeding in the Cayman Islands.  *See In re Application of Athos Asia Event Driver Master Fund*, No. 4:21-MC-00153-AGF, 2021 WL 1611673, at *1 (E.D. Mo. Apr. 26, 2021) ("There is no indication in the record here that a discovery order would be unwelcome by the Cayman Islands court."); *In re Application of Athos Asia Event Driven Master Fund*, No. 1:21-MC-00208-GBF, ECF 8 (S.D.N.Y. Mar. 3, 2021) (granting 1782 petition for discovery for use in Cayman appraisal proceeding).

exhaust the discovery procedures available in the foreign court before invoking section 1782 in federal court." *In Re Ex Parte Application of Nouvel, LLC*, No. 22-MC-0004-MCS(EX), 2022 WL 3012521, at *4 (C.D. Cal. June 8, 2022), *report and recommendation adopted*, 2022 WL 2901715 (C.D. Cal. July 22, 2022).  The discovery sought does not attempt to circumvent any proof-gathering restrictions in the Cayman Islands.  To the contrary, as Justice Mangatal explains, "Cayman courts expect the parties to obtain the evidence they believe is necessary to prosecute their case" and "[t]hus there is no requirement to obtain permission from a Cayman court before seeking relevant evidence abroad."  Mangatal Decl. ¶ 66.

### iii.    The Subpoena Is Not Unduly Burdensome.

The final *Intel* factor looks to whether the discovery requests are "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.  "The scope of discovery permitted under § 1782 is coextensive with the scope of discovery permitted by Federal Rule of Civil Procedure 26(b)(1)."  *In re Bayerische Motoren Werke AG*, No. MC-22-00016-PHX-SPL, 2022 WL 1092804, at *2 (D. Ariz. Apr. 12, 2022) (holding discovery requests that were "quite broad" were nonetheless "proportional to the needs of the case" and "within the scope of discovery permitted under § 1782").  The Application seek testimony within the personal knowledge of Respondent that is relevant to the Merger, which is expressly provided for in Federal Rule of Civil Procedure 45.  "[T]he Rules of Civil Procedure themselves ensure that the length, time and place of the deposition do not impose an undue burden."  *HRCHainan Holding Co., LLC v. Yihan Hu*, No. 19-mc-80277-TSH, 2020 WL 906719, at *15 (N.D. Cal. Feb. 25, 2020).  For that reason, courts in this Circuit routinely hold that depositions of third parties are not unduly burdensome.  *See, e.g.*, *Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, No. 18MC00084VAPKSX, 2018 WL 6517106, at *2 (C.D.

Cal. Aug. 15, 2018) ("Mrs. Casper has provided no evidence that her deposition would impose an undue burden on her, other than the mere assertion that this would be so. Thus, this Court finds that the relevance of Mrs. Casper's independent knowledge to the claims and defenses in the Stockinger Action outweighs any potential burden."); *TS Prod., Inc v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 532 (N.D. Cal. 2015) (denying motion to quash Rule 45 subpoena seeking deposition testimony); *Universal Church, Inc. v. Standard Constr. Co. of San Francisco, Inc*, No. 14-CV-04568-RS (KAW), 2015 WL 6167968, at *4 (N.D. Cal. Oct. 21, 2015) ("Defendants' contentions that the deposition is irrelevant and harassing also lack merit. Plaintiff explains that they seek to depose Teague regarding the knowledge and observations he obtained during his investigation . . . . This is relevant to the claims asserted in this case.").

As a member of the Buyer Group and the director and 50% equity owner of another member of the Buyer Group, Respondent has personal knowledge of the key issues in the Appraisal Proceeding. That evidence is proportional to the needs of the Appraisal Proceeding, a multi-billion dollar dispute.

Moreover, Petitioners are willing to meet and confer with Respondent to address any burden concerns. If the Court has remaining concerns about undue burden, granting the Application will not preclude Respondent from bringing a motion to quash or modify the discovery sought. If the Court finds merit to such objections, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995).

16

IV.     **CONCLUSION**

For the foregoing reasons, Petitioners respectfully request that the Court grant the

Application for an order pursuant to 28 U.S.C. § 1782.


 Dated: December 8, 2022


                                      By:     */s/ Thomas A. Gilson*
                                              _____

                                              **BEUS GILBERT MCGRODER PLLC**
                                              Thomas A. Gilson (AZ Bar No. 022460)
                                              701 North 44th Street
                                              Phoenix, Arizona 85008
                                              Telephone: (480) 429-3000
                                              tgilson@beusgilbert.com

                                              **PALLAS PARTNERS (US) LLP**
                                              Duane L. Loft*
                                              Brianna Hills Simopoulos*
                                              75 Rockefeller Plaza
                                              New York, NY 10001
                                              Telephone: (212) 970-2300
                                              Duane.Loft@pallasllp.com
                                              Brianna.Simopoulos@pallasllp.com

                                              **Pro hac vice* applications forthcoming

                                              *Counsel for Petitioners*

17